SNOWDEN (MILLETT v.). See Case No. 9,-600.

## Case No. 13,151.

### SNOWDEN v. PIERCE.

[2 Hayw. & Haz. 386.] [1]

Circuit Court, District of Columbia. 1861.

PATENTS—EXAMINERS—APPEAL— ACT MARCH 2, 1861—SECRETING INVENTION.

1. Under the circumstances of this case, it was not necessary for the appellant to go before the examiner-in-chief under the new law, and then appeal to the commissioner, before appealing to this court. It would give the act of March 2d, 1861, a retrospective operation.

2. The principle laid down by the court in Lovering v. Dutcher, governs this: That an inventor, to entitle him to the protection of the law, must be diligent in obtaining a patent. That, by delay and neglect to give the public his invention in presenting it at the patent office, he forfeits all claim to receive a patent.

In April, 1860, Thomas Snowden, United States inspector at the port of Pittsburg, obtained a patent on a valuable improvement in heating the feed water of steam boilers, by the direct agency of the live steam in the boiler. Subsequently Ephraim Pierce and Wm. McClurg made separate application for patents for the same invention. The commissioner of patents, according to the law of patents, declared an interference between the patent of Snowden and the said application. At the hearing before the patent office, priority of invention over McClurg was awarded

[1] [Reported by John A. Hayward, Esq., and Geo. C. Hazelton, Esq.]

to Snowden, and priority of invention over both McClurg and Snowden was awarded to Pierce.

DUNLAP, Chief Judge. This was an appeal by Thomas Snowden, from the decision of the commissioner of patents in the interference between his patent, No. 27,743, of April 3, 1860, and the application for a reissue of Ephraim Pierce's patent, No. 28,658, of June 12, 1860, and the application of William McClurg.

The invention in controversy, is for improvements "in heating the supply water for steam boilers." The object of Snowden's invention, as stated by the office in its decision of March 6, 1861, "is to avoid the inconvenience and danger due to the difference in temperature of different parts of the steam engine boiler, for supplying the water at a low temperature, when operating under a high pressure of steam; and his invention consists in locating the feed water pipe within the steam space of the boiler, having one end attached to the feed pump, and the other end terminating in the water space of the boiler."

Pierce, in his application for reissue, claims the same thing, as does also McClurg in his application. The interference was therefore rightly declared. McClurg has taken no appeal to me from the decision of the office of March 6, 1861, and the controversy before me is narrowed to the decision only of the conflicting rights of Snowden and Pierce. Mr. Leski's reply to Mr. Stanton's argument on the merits was filed with me June 1, 1861, and Mr. Fenwick's closing argument on the 12th inst., when the case was submitted.

A preliminary question has been raised as to my jurisdiction of this case, the same having been decided, March 6, 1861, four days after the passage of the act of March 2, 1861, entitled "An act in addition to an act to promote the progress of the useful arts." I will give my views generally of the true construction of this act of March 2, 1861, and then of the special circumstances attending the decision of this case, in the office.

Previous to the passage of the act March 2, 1861, all judicial acts done in the patent office by the primary examiners, or the board of appeals organized under the office regulations, were, in intendment of law, the judicial acts of the commissioner, and had no legal validity till sanctioned by him. The primary examiners and board of appeals, under the old system, were the organs of the commissioner, to enquire and to enlighten his judgment, and, till the commissioner gave validity to their judicial acts by his fiat, they had no legal existence as judgments. Under the act of March 2, 1861, the primary examiners and the examiners-in-chief are, by the terms of the act, recognized as judicial officers, acting independently of the commissioner, who can only control them when their judgments, in due course, come before the commissioner on appeal. The commissioner,

under this act of March 2, 1861, can give no judgment till the appeal reaches him, and this cannot be done till the judgment of the primary examiner has first been submitted to the examiners-in-chief. The judges of the circuit court of the District of Columbia, by law, can entertain no appeal, except from the decisions of the commissioner. All the decisions of the office, whether, by examiners or the old board of appeals, were, in law, the decisions of the commissioner, when sanctioned by him. When a primary examiner, under the old system, refused a patent, or decided an interference case, and the commissioner approved such decision, an appeal lay directly to one of the judges from such decision of the commissioner; not so under the new law of 1861. The primary examiners and the examiners-in-chief are all by the act of 1861, treated as judicial officers, having power, without control, within the sphere of their duty, to the exercise of their independent judgment. Their acts under the new law are not, as under the old system, the acts of the commissioner, but their own acts. They are no longer the mere organs of the commissioner, but independent officers. He can only reach and overrule them when their judgments come regularly before him on appeal.

It follows, therefore, that no judgment now in any patent case of the character above described can be given by the commissioner till it reaches him in due course, by appeal; that is to say, the applicant must go from the primary examiner, by appeal, to the examiners-in-chief, and from them, by appeal to the commissioner, and lastly from the commissioner to the judges of the circuit court.

The appeal to the judges, lies from the decisions of the commissioner, under the old system, and has not been expressly taken away. We have no right to infer or conclude that it has been taken away, by implication, by the creation of the appeal board of examiners-in-chief, with the right of appeal from them to the commissioner all such implication is repelled by the fact, well known, that an express repealing clause in the act of 1861, on its passage through the legislature, was stricken out.

I think there is no repugnancy, between the appeals given by the act of 1861 and the ultimate appeal to the judges. They may all well stand together. The ultimate appeal, to the judges, is the same appeal which originally, under the old law, laid to the old board of examiners outside the office, appointed by the secretary of state. This appeal extended to all final decisions of the commissioner refusing an applicant a patent, or determining an interference, and was afterwards transferred to the judges of the circuit court. I think this appeal to the judges still exists, but it can only be exercised after the applicant has gone the rounds of all the tribunals created by the new law, and after the decision of the commissioner.

I do not think, however, under the particular circumstances of this case, the applicant, Snowden, was first bound to have gone to the examiner-in-chief under the new law, and then to the commissioner, before coming to me. His case was submitted to the commissioner before the passage of the act of March 2, 1861. All the testimony had been taken, and closed, the arguments made, and the case in the hands of the commissioner for decision, before March 2, 1861. To apply the act to such a case would give it a retrospective operation. I entertain no doubt, therefore, that I have jurisdiction of this appeal.

On the merits of the dispute between Snowden and Pierce, I need spend but few words. The principles to govern it have been carefully considered by me in the case of Lovering v. Dutcher [Case No. 8,553], decided by me May 24, 1861, to which I refer, and the authorities cited in it. According to Mr. Pierce's own account, and the testimony of his witness Arthur, he discovered this invention in March, 1857, and described it so particularly to Arthur that he, Arthur, or any skillful mechanic, could have applied it practically to steamboats. Pierce enjoined secrecy on Arthur, as the witness states, and a most important invention, saving expense in steam navigation on the Western waters, and materially contributing to prevent explosions of boilers, and to save human life, and now in extensive use, is withheld from the public over three years. Pierce's first movement being to file a caveat, on February 9, 1860. Even this caveat gave no publicity. It went into the secret archives of the office, and was probably stimulated by the movements Snowden then had on foot, and was pressing, to secure the patent he applied for in the following March, and obtained April 3, 1860. But, however this may be, Pierce's gross negligence in secreting and failing to patent his invention for more than two years after its discovery forfeits all right in him now to claim a patent. His caveat in February, 1860, was too late. He had lost his right then, more than two years having then elapsed.

Nor would it do Mr. Pierce any good to treat his invention as immature in 1857, and in February, 1860, when he filed his caveat, asking time to mature it (although Arthur proves it perfect in 1857, and capable then to be applied to steamboats as now), because he would still be in default, and guilty of culpable negligence. He does not appear to have experimented since 1857, or to have used any means further to mature his discovery in this long period, or to have made any additions to it, and cannot and ought not, in that aspect of the case, to stand in the way of a subsequent original inventor, who had conceived and diligently pursued the same invention, and applied for and obtained a patent.

The appellant's first and second reasons of

appeal are sustained; and I do, June 25, 1861, reverse the judgment of the commissioner of patents of March 6, 1861, awarding priority of invention and a patent to Ephraim Pierce, on his reissue application.